UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**KENNETH SHEPPARD**

*Plaintiff*

**V.**                                                    No. _____

**STEVE MCCRAW, Director**
**TEXAS DEPARTMENT OF PUBLIC**
**SAFETY; SARAH FASHOLZ, Executive**
**Director COUNCIL ON SEX OFFENDER**
**TREATMENT**

*Defendants*

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE OF SAID COURT:

COME NOW Plaintiff KENNETH SHEPPARD and, pursuant to the Due Process and

Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; the

Double Jeopardy Clause of the Fifth Amendment to the United States Constitution; the Ex Post

Facto guarantee of Article I, Section 10 of the United States Constitution; the Full Faith and

Credit Clause guarantee of Article IV, Section 1 of the United States Constitution and Title 42

U.S.C. Section 1983 and 1988; files this their Original Complaint, and in this connection would

respectfully show unto the Court as follows:

## I.

## JURISDICTION

The Plaintiffs' Complaint raises questions arising under the United States

Constitution and federal law, and this Court has "federal question" jurisdiction pursuant to

Title 28, U.S.C. Section 1331. Furthermore, the Plaintiffs' Original Complaint includes

claims that seek compensatory damages, equitable declaratory and injunctive relief, and attorney's fees, against the Defendant, over which this Court has jurisdiction under Title 28, U.S.C. Sections 1343(a) and 2201. Venue is proper in the Houston Division of the United District Court for the Southern District of Texas, as the acts and omissions of Defendant Steven McGraw, about which Plaintiffs complain, occurred in Harris & Brazoria Counties, Texas.

## II.

## PARTIES

(A)

Plaintiff Kenneth Sheppard resides in Houston, Brazoria County, Texas.

(B)

Defendant Steven McGraw is the Director of the Texas Department of Public Safety in and for the State of Texas. As Defendant is being sued in his Official Capacity as an Agent of the State of Texas, the Plaintiff intends to provide Defendant with legal notice of this suit by service of summons on the Texas Secretary of State, on Defendants' behalf, *via* U.S. certified mail, restricted delivery, with return receipt requested, pursuant to Rule 4 (e)(1) of the Federal Rules of Civil Procedure; and, in accordance with Sections 17.026 (a) and 101.102 of the Texas Civil Practice and Remedies Code.

(C)

Defendant Sarah Fasholz is the Executive Director of the Council for Sex Offender Treatment in and for the State of Texas. As Defendant is being sued in her Official Capacity as an Agent of the State of Texas, the Plaintiff intends to provide Defendant with legal notice of this suit by service of summons on the Texas Secretary of State, on Defendants'

behalf, *via* U.S. certified mail, restricted delivery, with return receipt requested, pursuant to Rule 4 (e)(1) of the Federal Rules of Civil Procedure; and, in accordance with Sections 17.026 (a) and 101.102 of the Texas Civil Practice and Remedies Code.

### III.

### <u>FACTS</u>

#### (A)

Plaintiff on August 27, 2001 was indicted on a two count indictment, alleging in Count I that Plaintiff received child pornography in violation of 18 USC 2552A, and in Count II Possessing child pornography in violation of 18 USC 2552A.

#### (B)

On November 16, 2001, Plaintiff entered a plea of guilty and a PSI was ordered. A sentencing was held on April 18, 2002 on count II of the indictment and Count I of the indictment was dismissed on motion of the Government.

#### (C)

On April 27, 2002, A judgment and sentence was issued by the Court sentencing Plaintiff to 15 months confinement in the Bureau of Prisons and 3 years Supervised Released. Plaintiff was ordered to surrender himself to the Bureau of Prisons on July 19, 2002.

#### (D)

Plaintiff's duty to register as a sex offender, pursuant to 18 USC 20915(a)(1) would have been no later than October 19, 2018.

#### (E)

Plaintiff was at all times, including the time of the conduct that forms the basis of his criminal acts and since his release from prison, a resident of Texas.

(F)

Pursuant to Texas Law, Plaintiff is required to register as a sex offender in Texas and is required to register for life since his Federal conviction since it is substantially similar to possession of child pornography under Texas Law.

(G)

Since the State duty to register as a sex offender for possession of child pornography (lifelong duty) is longer than the federal duty to register as a sex offender for possession of child pornography (15 years), those convicted of possession of child pornography under Texas law, Tex. Code Crim. Proc., Art. 62, subchapter I, may petition to be allowed to deregister. However, under Subchapter I, only those convicted under Texas state law (A Texas Conviction in a Texas District Court) may petition to deregister as a sex offender. Those convicted of possession of child pornography under either Federal Law or the laws of another State may not apply to deregister as a sex offender.

(H)

As shown by exhibit A, Dr. Aaron Pierce a licensed Sex Offender Treatment Provider and authorized to do a risk assessments required for deregistration as a sex offender, Plaintiff would qualify for deregistration as a sex offender but for he was convicted in Federal Court even though he was in Texas when he committed his crime

(I)

This means that Plaintiff, even though his duty to register as a sex offender under federal law has expired, Plaintiff is still subject to registration as a sex offender for life in

4

Texas under Texas' statutory scheme. In addition, under Texas Law, Plaintiff has no vehicle to allow for him to deregister since his conviction is from a Federal Court in Texas not a Texas State District Court.

(J)

Plaintiff filed with Texas authorities to be able to proceed with Deregistration. Attached as exhibit B, is a letter dated February 24, 2021 that Plaintiff was denied the opportunity to be able to etition for deregistration as sex offender because Plaintiff's conviction for possession of child pornography was a conviction under federal statutory law and not and not a conviction under Texas statutory lawt

(K)

The State of Texas' statutory deregistration scheme does not purport by its terms to be justified by, or rest upon, any factual determination that a convicted in federal or another state of possession of child pornography (and not eligible to petition for deregistration as sex offenders) poses any more threat to children, or the community at large, due to a lack of sexual control then individuals convicted in Texas State Court of passion of child pornography (those allowed to petition to deregoster as sex offenders.

(L)

As the result of the acts and omissions set out specifically hereafter, Plaintiff alleges he has sustained compensatory damages actionable under Title 42 U.S.C. Section 1983, for having been deprived or subjected to the derivation of their federal constitutional rights by the Defendant Steve McCraw.

**IV.**

**LEGAL CLAIMS**

The enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme enacted by the legislature and administered by DefendantSteve McCraw and the manner in which the enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme have deprived Plaintiff, and will continue to deprive Plaintiff, of his constitutional rights to procedural due process, in violation of the Fourteenth Amendment to the United States Constitution; of his constitutional rights to Substantive due process, in violation of the Fourteenth Amendment to the United States Constitution; Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the Ex Post Facto guarantee of Article I, Section 10 of the United States Constitution; the Full Faith and Credit Clause guarantee of Article IV, Section 1 of the United States Constitution.

**(A) PROCEDURAL DUE PROCESS:**

Plaintiff alleges the enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme has deprived him, and will continue to deprive him, of his constitutional rights to procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

**(B) SUBSTANTIVE DUE PROCESS:**

Plaintiff alleges enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme has deprived him, and will continue to deprive him, of his constitutional rights to substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

**C) EQUAL PROTECTION:**

In addition to the foregoing claims, Plaintiff alleges has deprived him, and will continue to deprive him, of his constitutional right to Equal Protection of Law in violation of the Fourteenth Amendment to the United States Constitution. In this connection, it is alleged that:

i)   Although Defendants' enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme does provide for a person convicted in State Court in Texas for possession of child pornography, to be allowed to deregister as a sex offender, the enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme does not provide a similar ability for persons, such as Plaintiff, who were convicted of the same exact offense of possession of child pornography in federal court or another state, with the same opportunity to apply to deregister as a sex offender;

ii)  The Defendants' enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme to allowing for application to deregister as a sex offender to Federally convicted or convicted in another state of possession fo child pornography, is not justified by, does not rest upon, and does not further or advance, any compelling, or in the alternative any legitimate, substantial or rational governmental interest, by which it can survive constitutional scrutiny.

**D) EX POST FACTO VIOLATION:**

In addition to the foregoing claims, Plaintiff also alleges the enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme in question

by the Defendant has deprived him, and will continue to deprive him, of his constitutional right not to be subjected to an Ex Post Facto law, as guaranteed by Article I, Section 10, of the United States Constitution. In this connection, it is alleged that enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme unconstitutionally imposes a constitutionally impermissible retroactive "punishment."

**D) FULL FAITH AND CREDIT:**

In addition to the foregoing claims, Plaintiff also alleges the enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme in question by the Defendant has deprived him, and will continue to deprive him, of his constitutional right not to be entitled to full faith and credit, as guaranteed by Article IV, Section 1, of the United States Constitution. In this connection, it is alleged that the enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme causes Plaintiff to have to register as a sex offender longer than the laws of the jurisdiction he was convicted in requires registration as a sex offender.

## V.

## <u>RELIEF REQUESTED</u>

In light of the foregoing facts and claims, the Plaintiff moves the Court to:

A) Issue a declaratory judgment, pursuant to Title 28, U.S.C. Section 2201, that enactment, application and enforcement of the Texas deregistration as a sex offender statutory scheme, unconstitutional as applied to Plaintiff;

B) Issue a permanent injunction, pursuant to Title 28, U.S.C. Section 1343, prohibiting Defendant for not allowing those convicted of possession of child pornography from applying for deregistration as a sex offender;

C) Award Plaintiff his compensatory damages, as incurred, for the deprivation of their constitutional rights by Defendant, as determined by a jury on the trial of the merits of Plaintiffs' claims, which Plaintiffs hereby demand pursuant to the Seventh Amendment to the United States Constitution;

D) Award Plaintiff nominal damages pursuant to Title 42, U.S.C. Section 1983 for the violation of their "absolute" constitutional rights to procedural and substantive due process; Equal Protection and Full Faith and Credit.

E) Award the Plaintiffs reasonable costs, and reasonable attorney's fees pursuant to Title 42, U.S.C. Section 1988, which are shown to have been necessarily incurred by them in the prosecution of this matter; and

F) Grant Plaintiffs such other and further relief to which she may show herself entitled.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that process will issue requiring the Defendant to appear and answer to Plaintiffs' Original Complaint, and that in due course, this Honorable Court will grant the relief requested by Plaintiffs, and will grant such other and further relief to which Plaintiffs may show themselves entitled.

Respectfully submitted,

/s/ Scott Pawgan
Texas Bar No. 24002739
*Attorney-in-Charge for Plaintiffs*
5003 Walzem Rd., Box 512
San Antonio, TX 78217
936-242-6975 (voice)
800-619-5113 (fax)

*\*Attorney-in-Charge for Plaintiff*

9

# EXHIBIT A

**Aaron P. Pierce, PhD, LSOTP**
**Pierce Clinical & Forensic Mental Health Services**
**2214 Washington Avenue**
**Waco, Texas**
**Tele/Fax: 254-732-0670**
_____

**Forensic Evaluation (Deregistration)**

February 22, 2019

Scott Pawgan
Attorney-at-Law

RE: Sheppard, Kenneth

Dear Mr. Pawgan,

On January 8, 2019 I conducted a forensic evaluation of Mr. Kenneth Sheppard (DOB: 10-15-1968; age 50). When conducting this evaluation, I used the methodology required by the Council on Sex Offender Treatment for Licensed Sex Offender Treatment Providers who are conducting deregistration evaluations.  I am reporting my findings in the required report format for a deregistration report.

Caveat: Mr. Sheppard does not currently qualify for deregistration, per Texas law.  He was made aware that regardless of the outcome of this evaluation, he will not be permitted to deregister.  Mr. Sheppard indicated that he still wanted to undergo this evaluation as he and his attorney would still be making an attempt to obtain permission to be removed from the Texas Sex Offender Registry. This examiner also spoke with Mr. Sheppard's attorney, Scott Pawgan, and this was confirmed.

The following summarizes my current opinions regarding Mr. Sheppard.

1. **Reliability of Responses**: The reliability of Mr. Sheppard's responses during this evaluation process was assessed by use of the Paulhus Deception Scales. The Paulhus Deception Scales were designed to be used with questionnaires that have no validity scales. In this case, the Paulhus Deception Scales were used to assess the manner in which Mr. Sheppard responded to interview questions regarding his sexual history, sexual beliefs, and sex offender treatment. Mr. Sheppard obtained a raw score of eleven (11) on the Impression Management Scale, which transforms to a t-score = 62. Mr. Sheppard's score on this scale falls in the "Above Average Range", which suggests that he may have presented an overly positive image of himself but he is still below the cut off score necessary to be classified as deceptive with his responses.

2. **Nature of Offense**: Based upon Mr. Sheppard's self-report he was prosecuted for one count of Possession of Child Pornography in Federal Court in Harris County, Texas in 2000.

3. **Sex Offender Treatment:** Mr. Sheppard was able to give a good account of his treatment experience. He learned how to assess risk, cope with risk, and avoid or expeditiously escape risk situations. He learned that he that he used criminal thinking distortions to support his offense behavior. He was able to identify his risk factors. I asked Mr. Sheppard who was harmed by his offense behavior and he listed in this order his victims who were the children he looked at in the illegal pornography he used, his family, and the people close to him.

4. **Risk Assessment for Sexual Re-offense**: Risk is the likelihood that a person will exhibit a specific behavior in the future. Mr. Sheppard's' risk for sexual re-offense was assessed by use of the Risk Matrix 2000, an actuarial risk assessment instrument. Mr. Sheppard obtained a score of one (1) on the Risk Matrix 2000, which falls in the LOW RISK range. Since Mr. Sheppard's score does not fall in the high-risk range, his risk level on this factor is consistent with being allowed to deregister.

5. **Risk Assessment for General Criminality**: Mr. Sheppard's risk for general criminality was assessed by use of the Level of Service Inventory - Revised, an actuarial risk assessment instrument. Mr. Sheppard obtained a score of two (2) on the LSI-R, which falls in the LOW RISK range. In order to be classified as a high risk on this instrument, Mr. Sheppard would need to score sixteen (16) or higher. Since Mr. Sheppard's score does not fall in the high-risk range, his risk level on this factor is consistent with being allowed to deregister.

6. **Risk Assessment for Nonsexual Violence and Severe Criminality**: Mr. Sheppard's risk for nonsexual violence and severe criminal acts was assessed by use of the Hare PCL-R, an actuarial risk assessment instrument. Mr. Sheppard obtained a score of two (2) on this instrument. On the PCL-R, a score of thirty (30) or higher is needed to classify someone as a high risk. Since Mr. Sheppard's score does not fall in the high-risk range, his risk level on this factor is consistent with being allowed to deregister.

7. **Overall Opinion:** None of Mr. Sheppard's risk ratings fall in the high-risk area. Mr. Sheppard meets the risk criteria for deregistration.

This examiner has the appropriate knowledge and competency to render professional opinions and offer recommendations on the subject matter of this evaluation. This examiner has no significant reservations about the certainty or accuracy of diagnoses, judgments, test interpretations, or predications offered in this report. There are no test factors or characteristics of the person being assessed that might affect the professional judgment or accuracy of interpretations offered in this report. All opinions and recommendations are based on information and techniques sufficient to provide appropriate substantiation for each finding. No opinions are offered on matters where there is insufficient information to render a professional opinion. All opinions offered by this examiner are based upon the information available at this time. Should additional

information become available, this information could be used to supplement or modify the opinions expressed in this report.

This examiner had no contact with anyone other than Mr. Sheppard.  Any impressions or characterizations of anyone other than Mr. Sheppard's are opinions voiced by Mr. Sheppard or opinions found in the materials reviewed.  This examiner may or may not agree with opinions offered by others because the reliability and validity of these opinions are unknown.

Sincerely,

Signed Electronically:  Aaron P. Pierce, Ph.D., LSOTP-S

**Methodology**

- <u>Contact with Mr. Sheppard</u>:
  - ➤ One Clinical Interview
  - ➤ Mental Status Exam
  - ➤ Social History
- <u>Background Questionnaires</u>:
  - ➤ Social History
  - ➤ Sexual Offense Summary
  - ➤ Sex Offender Treatment Summary
- <u>Psychological Testing</u>:
  - ➤ Personality Assessment Inventory
- <u>Reliability Testing:</u>
  - ➤ Paulhus Deception Scale
- <u>Risk Assessment</u>
  - ➤ Static-2002
  - ➤ Hare PCL-R
  - ➤ Level of Service Inventory - Revised
- <u>Materials Reviewed</u>
  - ➤ Criminal Background Documents and Offense Records from attorney

**Current Matter**

Mr. Sheppard is seeking to be removed from the public internet registry of sex offenders. The following is a summary of information about Mr. Sheppard's sex offense and sex offender treatment.

**Official Version of the Offense**

When asked to explain the offense, Mr. Sheppard stated, "Right around this time, my dad and grandmother died and my girlfriend told me she wasn't ready to marry me. I had been thinking I was going to get married, have children and everything. I had a really good job, and just finished graphic design school. I was getting really depressed and just started getting online and was looking at all kinds of things. I was looking at suicides, car crashes and all sorts of things. I started looking at porn. I started going to sites where I knew the people were underage. In my mind, if I could go there and use my credit card it must be legal. Evidently, one of those sites out of three or four, was busted and that is how I was found. They started offering to sell the images, and I found out it was the postal inspector. I ordered VHS tapes. I was never trying to reach out to minors or anything."

**Sex Offense Summary**

- Time period in which you committed your instant offense: Mr. Sheppard's best estimate is that he obtained child pornography for about a 6 to 8-month period.
- Victim of your instant offense: Mr. Sheppard identified the female minors who were depicted in the child pornography he obtained as victims of his offense behavior.
- Those harmed by your offense: Mr. Sheppard stated first that his victims were harmed. He listed his family members and those close to him as also being harmed.
- First time that you thought about committing your offense: Mr. Sheppard said that his decision to obtain child pornography was an "impulsive act". He characterized it as a "rash" decision that was consistent with his feeling of depression at the that particular time in his life.
- Thoughts and feelings when planning your crime: Mr. Sheppard's first act of obtaining child pornography was impulsive. He said that he would sometimes be excited to view child pornography, and sometimes his viewing would be due to boredom.
- Fantasies about the victims prior to your crime: Mr. Sheppard stated that he masturbated to the child pornography and the adult pornography. He said that his viewing was not exclusive to children but was a mixture of images.
- Grooming designed to set-up the victim: Mr. Sheppard's offense did not involve having to groom a victim.
- Description of sexual offense: Mr. Sheppard said that he obtained child pornography via a search engine. He stated, "I would go to a mainstream site, and it would have links. Then, those links would keep going and you would eventually end up with child pornography."
- All the sexual acts you performed on the victim: Mr. Sheppard viewed images of children who were nude.
- All of the sexual acts that you had the victim perform on you: No sexual acts were performed on Mr. Sheppard by any of his victims.

- <u>Number of times you had sexual contact with the victim</u>:  Mr. Sheppard never had physical sexual contact with any of his victims.

**Supervision and Treatment**

- <u>Listing of all treatment providers</u>: Mr. Sheppard received treatment from two clinical psychologists in the community and one when on supervised release.  He attended sex offender treatment for a total of 5 years, and successfully completed treatment while on supervised release.
- <u>Date began sex offender treatment</u>: Mr. Sheppard began sex offender treatment in 2000.
- <u>Date completed sex offender treatment</u>: Mr. Sheppard completed sex offender treatment in 2004.
- <u>Ever terminated from a sex offender group or program:</u> no
- <u>Ever receive incident reports:</u> no
- <u>While in sex offender treatment ever arrested or incarcerated:</u> Mr. Sheppard was never arrested or incarcerated while in treatment.
- <u>Frequency of treatment sessions at the beginning of treatment:</u> once a week
- <u># of other clients in group therapy session:</u> 5-7
- <u>Ever attended therapy less frequently than weekly:</u> No.
- <u>Treatment workbook:</u>  none
- <u>Chaperons:</u>  Mr. Sheppard does not have anyone in his life who has been formally trained as a chaperone.
- <u>Knowledge and skills acquired in sex offender treatment:</u> Mr. Sheppard told me that he has learned about thinking errors, offense cycles, control techniques, high risk situations, and many factors consistent with an approved treatment program.
- <u>Explanation of high-risk situation:</u> Mr. Sheppard told me that a high-risk situation for him is being depressed or falling into a depressive state.
- <u>Personal coping for high risk situations</u>: Mr. Sheppard copes with his risk situations by monitoring for signs of depression.  He attends individual therapy if he recognizes the presence of such signs.  He most recently saw his therapist four months ago for a check-in session.
- <u>Personal assessment of risk</u>: Mr. Sheppard stated that he thinks he is a low risk to re-offend based on his management of his risk situations.  He is confident that if he abides by his relapse prevention plan that he will not re-offend.

**Personality Assessment Inventory (PAI)**

Mr. Sheppard's PAI clinical profile reveals no elevations that should be considered to indicate the presence of clinical psychopathology.  An excerpt from his clinical interpretive report suggests that his results on this instrument are valid.

>    *With respect to positive impression management, the client's pattern of responses suggests that he has somewhat of a tendency to present himself in a favorable light, relatively free of common shortcomings or problems that many individuals will admit to experiencing.  He appears*

*rather reluctant to acknowledge to personal limitations and he may repress or deny distress or other internal consequences that might arise from such limitations….these tendencies do not indicate a level of defensiveness that would render the test results invalid…*

### Risk Assessment for Sexual Re-offense

The Risk Matrix 2000 is an actuarial risk assessment instrument designed to assess an individual's risk for sexual recidivism as well as non-sexual violent recidivism.  It is an instrument that research indicates has good reliability and validity.  The Risk Matrix 2000 is widely accepted as the best risk assessment instrument to utilize when the only sexual offense committed by the subject being evaluated is Possession of Child Pornography.

Mr. Sheppard was rated as a low risk on the Risk Matrix 2000.  Individuals who are rated as a low risk on this instrument are in a group that has an 11% recidivism rate over a period of fifteen years.  Mr. Sheppard is in a group of offenders in which 89% do not re-offend.

| Risk Matrix 2000 | Score |
|---|:---:|
| **Age at Release**<br>Eighteen to twenty-four: 2 points<br>Twenty-five to thirty-four: 1 point<br>Thirty-five or older: 0 points | 0 |
| **Appearance for Sexual Offenses**<br>• Zero to one: 0 points<br>• Two: 1 point<br>• Three or four: 2 points<br>• Five or more: 3 points | 0 |
| **Appearances for Nonsexual Offenses**<br>• Four or less: 0 points<br>• Five or more: 1 point | 0 |
| **Preliminary Risk Category**<br>• Low: 0 points<br>• Medium: 1 to 2 points<br>• High: 3 to 4 points<br>• Very High: 5 to 6 points | Low |
| **Aggravating Factors**<br>• Male Victim<br>• Stranger Victim<br>• Single (never in a marital type relationship)<br>• Non-Contact sexual offense | 1 |
| **Final Risk Category**<br>Raise the risk category one level if the individual has two or three of the Aggravating factors<br>Raise the risk category two levels is all four factors are present | **Low** |

## Risk Assessment for General Criminality

The LSI-R samples many of the major and minor risk factors of criminal activity to provide comprehensive risk/needs assessment.  The components of the LSI-R include criminal history, education/employment, family/marital, accommodations, leisure/recreation, companions, alcohol/drug problems, emotional/personal, and attitudes.  The LSI-R generates a numeric rating for an individual.  The total score leads to classifying an individual's risk while on probation: minimum (0 to 7), medium (8 to 15) and maximum (16 and up).  Mr. Sheppard was rated using the LSI-R to assess his risk to the community, should he be placed on community supervision.

Mr. Sheppard was awarded two (2) points on this instrument, which places him in the LOW RISK range. Mr. Sheppard would need to obtain a score of sixteen or higher to be in the high-risk range on the LSI-R. Mr. Sheppard's score does not fall in the high-risk range, which means that he meets the risk criteria for deregistration on this risk assessment instrument.

| Findings that resulted in Mr. Sheppard obtaining points on the **Criminal History Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Criminal History Factor** |
| --- | --- |
| • He has been incarcerated | • Prior to his sex offense, he was never arrested or convicted of a crime<br>• He doesn't have three or more charges for his most recent or current sentencing occasion<br>• He was not arrested under age sixteen<br>• He doesn't have a history of escape from a correctional placement or facility<br>• He has never been punished for institutional misconduct<br>• He does not have an official record of violence |
| Findings that resulted in Mr. Sheppard obtaining points on the **Employment Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Employment Factor** |
| No known risk factors | • He is employed<br>• He has never been frequently unemployed<br>• He has never been out of work for a continuous 12-month period<br>• He has never been fired from a job |
| Findings that resulted in Mr. Sheppard obtaining points on the **Education Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Education Factor** |
| No known risk factors | • He completed the tenth grade<br>• He completed high school<br>• He was never suspended or expelled |

| Findings that resulted in Mr. Sheppard obtaining points on the **Work Performance Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Work Performance Factor** |
|---|---|
| • No known risk factors | • He is employed<br>• He gets along with coworkers<br>• He has never been disciplined by his superiors at work |
| Findings that resulted in Mr. Sheppard obtaining points on the **Financial Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Financial Factor** |
| • No known risk factors | • He is not currently having financial problems<br>• He is not receiving social assistance |
| Findings that resulted in Mr. Sheppard obtaining points on the **Family & Marriage (Significant Other) Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Family & Marriage (Significant Other) Factor** |
| • No known risk factors | • Has was satisfied in his marriage<br>• No other members of his family have a criminal history<br>• Rewarding family relationships<br>• Rewarding relationship with extended family |
| Findings that resulted in Mr. Sheppard obtaining points on the **Living Accommodations Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Living Accommodations Factor** |
| • No known risk factors | • He has satisfactory living arrangements<br>• He hasn't changed his address three times or more in the last twelve months<br>• He doesn't live in a high crime neighborhood |
| Findings that resulted in Mr. Sheppard obtaining points on the **Leisure & Recreation Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Leisure & Recreation Factor** |
| • No known risk factors | • He makes good use of his leisure time |
| Findings that resulted in Mr. Sheppard obtaining points on the **Companionship Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Companionship Factor** |

| | |
|---|---|
| • No known risk factors | • He is not socially isolated<br>• He doesn't have criminal acquaintances<br>• He doesn't have criminal friends<br>• He has many acquaintances who are not criminals<br>• He has many friends who are not criminals |
| Findings that resulted in Mr. Sheppard obtaining points on the **Alcohol & Drug Problem Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Alcohol & Drug Problem Factor** |
| • No known risk factors | • He doesn't have an alcohol abuse problem now<br>• He does not have a history of alcohol abuse problems<br>• He doesn't currently have a drug abuse problem<br>• He does not have a history of a drug abuse problem<br>• His substance use hasn't led to trouble with the law<br>• His substance abuse did not interfere with work<br>• His substance use hasn't caused medical problems<br>• He doesn't show other signs of substance abuse problems |
| Findings that resulted in Mr. Sheppard obtaining points on the **Emotional & Personal Problems Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Emotional & Personal Problems Factor** |
| • He has a history of treatment for depression | • He is not having mental health problems<br>• He is not suffering from a severe mental health problem<br>• He is not currently receiving mental health treatment<br>• He doesn't appear to warrant mental health evaluation or treatment |
| Findings that resulted in Mr. Sheppard obtaining points on the **Attitudes & Orientation Factor** | Findings that resulted in Mr. Sheppard not obtaining points on the **Attitudes & Orientation Factor** |
| • No known risk factors | • He has prosocial attitudes<br>• He has conventional beliefs |

|  | <ul><li>He believes his sentencing process and sentence are fair</li><li>He successfully completed his term of supervision</li></ul> |
| --- | --- |

**Risk Assessment for Nonsexual Violence and Severe Criminality**

The Hare Psychopathy Checklist – Revised is designed to determine if an individual is a psychopath.   The psychopath is the person most likely to commit criminal offenses.   The psychopath is also the type of person least likely to respond to treatment.  The PCL-R is a twenty-item checklist. Items are grouped into two factors: Factor I-Aggressive Narcissism and Factor II-Antisocial Tendencies. A score of thirty (30) or higher is needed to classify a person as a psychopath.

Mr. Sheppard obtained a score of three (2) out of a possible total score of forty (40).  Mr. Sheppard's score indicates that he is not psychopathic.  A score of thirty (30) or higher is needed to classify someone as a high risk.  Since Mr. Sheppard's score does not fall in the high-risk range, his risk level on this factor is consistent with being allowed to deregister.

| PCL-R Factors that Apply to Mr. Sheppard | PCL-R Factors that Do Not Apply to Mr. Sheppard |
|---|---|
| **Total Factors = 2** | **Total Factors = 18** |
| • He has some sexual promiscuity as evidenced by his sex offense and other past sexual behaviors<br><br>• He has a history of impulsive behavior | • He is not grandiose<br>• He doesn't appear to be a thrill-seeker<br>• He is not a pathological liar<br>• He has no history of using scams to exploit family, friends or others<br>• He shows guilt and remorse<br>• He is capable of recognizing and expressing emotions<br>• He is not emotionally calloused<br>• He has a history of financial self-reliance<br>• He has no history of fighting<br>• He was not a problem child at home or in school<br>• He has set and accomplished long-term goals<br>• He takes responsibility for his actions<br>• He has done a good job meeting his obligations<br>• He was not arrested as a juvenile<br>• He doesn't show criminal versatility |

# EXHIBIT B

 **Council on Sex Offender Treatment**
P.O. Box Mail Code 1982
PO BOX 149347,   Austin, TX 78714-9347
Phone (512) 834-4530     Fax (512) 834-6677
Email: csot@dshs.state.tx.us

February 24, 2021

*Via email:  scottpawgan@gmail.com*

Scott Pawgan
5003 Walzem Rd., Box 512
San Antonio, TX 78218

Re: Sex Offender Deregistration – Kenneth Wayne Sheppard

Mr. Pawgan:

This is to acknowledge the Texas Council on Sex Offender Treatment has received and reviewed the documentation submitted in connection with your client's application for early termination of his obligation to register as a sex offender in the State of Texas.

To qualify for deregistration, your client's reportable conviction or adjudication must be one of those found in Chapter 62 of the Texas Code of Criminal Procedure for which, as described in 37 Tex. Admin. Code § 37.3, the length of duty for registration under Texas law is greater than the length of duty for registration under federal law.

Because your client's conviction was for a federal offense, not a Texas offense, he is not eligible for deregistration.

The agency is practicing social distancing in response to the COVID-19 pandemic; therefore, we are not physically present in the office. Please contact Mack Harrison, the attorney that represents CSOT, or myself, by email, if you have any questions.   mack.harrison@hhs.texas.gov or kathy.watson@hhs.texas.gov.

Sincerely,

 /s/  *Kathy A. Watson*

Paralegal
Office of Chief Counsel
Texas Health and Human Services